UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARK ALAN DAVIS,

     Plaintiff,

v.                    CASE No. 8:13-CV-2892-T-17TGW

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

     Defendant.

_____

## REPORT AND RECOMMENDATION

     The plaintiff in this case seeks judicial review of the denial of his claim for Social Security disability benefits.[1]  Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain any reversible error, I recommend that the decision be affirmed.

### I.

     The plaintiff, who was fifty-four years old at the time of the law judge's decision and who has some college education, has worked as an

_____

[1]This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998.  See also Local Rule 6.01(c)(21).

engineering laboratory technician, electronics bench tester, and an operations manager (Tr. 37, 38, 40, 173, 185).   He filed a claim for Social Security disability benefits, alleging that he became disabled due to a herniated disc, cervical spine impairment, severe back pain, hypertension, and hyperlipidemia (Tr. 185).   The claim was denied initially and upon reconsideration.

At his request, the plaintiff then received a de novo hearing before an administrative law judge.   The law judge found that the plaintiff had severe impairments of  "chronic neck pain status post cervical disc fusion; status post left shoulder aneurysm repair, and hypertension" (Tr. 21). The law judge concluded that the plaintiff (Tr. 22):

> has the residual functional capacity to perform light
> work as defined in 20 CFR 404.1567(b) except the
> claimant can lift/carry 20 pounds occasionally and
> 10 pounds frequently; sit for 1 hour continuously
> and a total of 6 hours per 8-hour workday; stand
> for 1 hour at a time and walk for 20 minutes
> continuously for a combined 6 hours per 8-hour
> workday; never climb ladders, ropes, or scaffolds;
> pushing and pulling is unlimited; occasionally
> climb ramps or stairs; occasionally crouch;
> frequently balance, stoop and kneel; fine and gross
> manipulation is limited to a frequent basis (2/3 of

the time) with his upper left extremity; and he must
avoid moderate exposure to cold.

The law judge determined that those restrictions did not preclude the plaintiff

from returning to his past work as an engineering laboratory technician and

operations manager (Tr. 26).

Additionally, the law judge asked the vocational expert whether

there were other jobs in the national economy that could be performed by

someone of the same age, background, and residual functional capacity as the

plaintiff (Tr. 64-65). The vocational expert testified there were jobs that the

plaintiff could perform, such as cashier, ticket seller, and arcade attendant (Tr.

27-28, 74). Therefore, the law judge ruled that the plaintiff was not disabled

(Tr. 28). The Appeals Council let the decision of the law judge stand as the

final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits, a

claimant must be unable "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which

... has lasted or can be expected to last for a continuous period of not less

than twelve months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3). The Act provides further that a claimant is not disabled if he is capable of performing his previous work. 42 U.S.C. 423(d)(2)(A).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

## III.

The plaintiff contends that the law judge erred by not assigning proper weight to the opinion of his treating physician, and that he failed to

evaluate properly the plaintiff's credibility (Doc. 14 , pp. 10, 15).[2] Neither
argument is meritorious.

A.   The plaintiff argues first that the law judge erred by not
giving proper weight to the opinion of his treating pain management
physician, Dr. George S. Sidhom (id., pp. 10-14). That contention is baseless
because the law judge stated good cause for discounting that opinion.

The record reflects that Dr. Sidhom and Dr. Alejandro Tapia
from the Brandon Pain Clinic treated the plaintiff from December 2010 to
February 2012, although Dr. Sidhom states that he first treated the plaintiff
in January 2002 (Tr. 240, 374, 380). Dr. Sidhom completed in March 2012
a Regional Pain Syndrome/Neuropathic Pain Impairment Questionnaire in
which he opined that the plaintiff could sit for one hour and stand/walk for
one hour in an eight-hour workday, and he could never lift 10 pounds (Tr.
374-79). Dr. Sidhom opined further that the plaintiff would have to get up
and move around continuously for an undetermined amount of time, and that
the plaintiff's pain would frequently interfere with his attention and
concentration (Tr. 376, 378). Thus, the essence of Dr. Sidhom's opinion is

---

[2]The page numbers correspond with those assigned by the CM/ECF system.

that the plaintiff's impairments were disabling. Dr. Sidhom attributed these limitations to chronic neck pain radiating to the left shoulder, clinical evidence of cervical facet joint syndrome, cervical radiculopathy, clinical evidence of suprascapular nerve entrapment, and myalgia of the cervical and trapezius muscles (Tr. 374-79).

Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not according them such weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

The law judge acknowledged that Dr. Sidhom completed a Regional Pain Syndrome/Neuropathic Pain Impairment Questionnaire ("Questionnaire") in which Dr. Sidhom opined that the plaintiff had disabling functional limitations, but he gave the opinion little weight (Tr. 26). In this regard, the law judge explained (id.):

Little weight is given to this assessment because it is inconsistent with other evidence. First, the doctor opined that the claimant had had these symptoms and limitations since 2002, but the claimant was able to work at substantial gainful levels from 2002 to 2009, despite having to undergo surgeries during that time period (4D). Second, Dr. Sidhom's assessment is inconsistent with the claimant's testimony. At the hearing, the claimant testified that he is able to sit continuously for at least an hour at a time, but Dr. Sidhom opined that the claimant can only sit for up to an hour during an entire 8-hour day. Additionally, [D]octor Sidhom indicated that pain would interfere with the claimant's attention and concentration frequently, but there is nothing in the treatment records to support such a limitation. In fact, the claimant testified that on a daily basis, he reads and watches television. He also drives multiple times per week. All these activities require attention and focus. Overall, even though Dr. Sidhom is a treating source, little weight is afforded to this assessment because it is inconsistent with the claimant's work history, it is inconsistent with the claimant's testimony, it is inconsistent with the claimant's activities of daily living, and it is inconsistent with the treatment records.

The law judge also noted that, contrary to Dr. Sidhom's opinion, a residual functional capacity for a range of light work "is ... consistent with the radiographic evidence ... which generally shows that the claimant has no

objective cervical problems" (Tr. 25). The law judge's explanation provides good cause for discounting Dr. Sidhom's opinion in the Questionnaire. See Lewis v. Callahan, supra.

Initially, it is noted that the opinion stated in the Questionnaire is conclusory. Thus, Dr. Sidhom's general diagnoses of "chronic neck pain," "cervical facet joint syndrome," "radiculopathy," and "myalgia," (Tr. 374) do not meaningfully explain Dr. Sidhom's extreme opinion of debilitating functional limitations. See Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005) ("a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work"); Longworth v. Commissioner of the Social Security Administration, 402 F.3d 591, 596 (6th Cir. 2005) (physician needs to translate how abnormal clinical findings affect functioning). Such an explanation is critical in this case where the diagnostic and clinical findings, discussed infra, pp. 13-15, do not show disabling impairments. Therefore, the conclusory nature of Dr. Sidhom's opinion alone provides a recognized basis for discounting the Questionnaire. Lewis v. Callahan, supra; Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987);

Lanier v. Commissioner of Social Security, 252 Fed. Appx. 311, 313 (11th

Cir. 2007); see, e.g., Brown v. Commissioner of Social Security, 442 Fed.

Appx. 507, 512 (11th Cir. 2011) (law judge provided good cause to reject the

treating physician's opinions stated in forms that did not reference his

treatment records or adequately explain his opinions).

      Furthermore, substantial evidence supports the law judge's

finding that Dr. Sidhom's assessment is inconsistent with Dr. Sidhom's own

treatment records (see Tr. 26).   See Barclay v. Commissioner of Social

Security Administration, 274 Fed. Appx. 738, 740 (11th Cir. 2008) (lack of

supporting medical records may be considered in rejecting the treating

physician's opinion); Wind v. Barnhart, supra, 133 Fed. Appx. at 692 (the

assessment of a treating physician that was not supported by her own

treatment notes was not entitled to significant weight). For example, Dr.

Sidhom's treatment notes do not reflect disabling clinical findings. Thus, the

treatment notes typically mention the plaintiff's subjective complaints of neck

and left shoulder pain, muscle tenderness upon palpitation, and some

limitation of range of motion (Tr. 362, 367, 368, 372, 380).   Notably, in

February 2012, just weeks before Dr. Sidhom completed the Questionnaire,

Dr. Sidhom observed that the plaintiff's cervical range of motion had improved to approximately 90% of the expected normal range (Tr. 381). Furthermore, physical examinations typically did not show neurological deficits, and there is no edema, cyanosis, or clubbing (Tr. 249, 359, 361, 362, 365, 368, 372, 381).

Additionally, the law judge emphasized that Dr. Sidhom's opinion of disabling functional limitations conflicts with his treatment notes that document over time a substantial reduction in the plaintiff's pain and corresponding increase in the plaintiff's activity (see, e.g., Tr. 358, 361, 364). In this regard, the law judge explained (Tr. 25):

> Throughout 2011, the claimant continued with pain management treatment, but these records show that the claimant had considerable reductions in pain with his treatment. For example, in June 2011, the doctor noted that the claimant has had significant long-lasting improvement with pain management. The claimant also reported no side effects from his medication (13F at 10-13). In August 2011, the doctor noted that pain medication is helping with greater than 70-80% reduction of the claimant's pain problem. He also reported increased activities of daily living (13F at 7-9). Additionally, in November 2011, the claimant denied mediation side effects. Dr. Sidhom commented that the pain medication is helping with greater than 50-60%

reduction of the pain problem (13F at 4-6). Likewise, in December 2011, the claimant reported greater than 80% improvement with the most recent epidural steroid injection for left cervical radiculopathy. He denied side effects from his medication in the form of mood changes, dizziness, drowsiness, or confusion. He also reported increased activities of daily living with the pain medicine therapy (13F at 1-3). This relief continued in 2012. For example, in February, Dr. Sidhom indicated that the claimant's pain medicine therapy is helping with greater than 80% reduction of his pain problem (15F).

(See, e.g., Tr. 358, 361, 364, 367, 380).

Additionally, Dr. Sidhom's treatment notes do not identify any restrictions on the plaintiff's functioning. See Longworth v. Commissioner of the Social Security Administration, supra, 402 F.3d at 596 (a lack of physical restrictions constitutes substantial evidence for a finding of non-disability); Vesy v. Astrue, 353 Fed. Appx. 219, 223 (11th Cir. 2009) (rejecting treating physician's opinion when his treatment notes did not suggest the claimant was as limited as he opined later). Moreover, the law judge correctly noted that Dr. Sidhom's opinion that the plaintiff had "symptoms and limitations since January 22, 2002" is unsubstantiated, and

the presence of disabling limitations is contradicted by the plaintiff's gainful

employment from 2002 to 2009 (see Tr. 25, 26).

The law judge also reasonably found that Dr. Sidhom's opinion

of extreme limitations is not supported by the objective evidence and other

medical evidence of record (see id.). See Reynolds-Buckley v. Commissioner

of Social Security, 457 Fed. Appx. 862, 864 (11th Cir. 2012) (good cause to

afford less weight to a treating physician's opinion when the evidence

supported a contrary finding); Crawford v. Commissioner of Social Security,

363 F.3d 1155, 1159 (11th Cir. 2004) (treating physician's report "may be

discounted when it is not accompanied by objective medical evidence").

Thus, as the law judge stated, the objective diagnostic testing did not reveal

disabling limitations (Tr. 24, 25). Specifically, the law judge noted that the

MRI of the plaintiff's cervical spine showed an intact cervical fusion, and was

otherwise normal, with no evidence of nerve pinching or spinal cord

compression; a CT scan of the claimant's left shoulder was normal; and,

although an EMG showed possible denervation of the left biceps muscle,

nerve conduction studies in the upper left extremity were normal (id.; see Tr.

221, 251, 291, 292). Moreover, examining physicians Dr. Daniel Murphy and

-13-

Dr. Donna Saatman specified that there was no objective evidence of injury to the cervical spine (Tr. 25; see Tr. 221, 347).  The law judge also noted that a pre-disability period cervical fusion and subsequent thrombectomy had been successful  (Tr. 221-22, 252).

Additionally, the law judge mentioned in the decision several clinical findings that  were inconsistent with the disabling limitations opined by Dr. Sidhom.   For example, the law judge noted that the plaintiff had a normal gait and coordination, and maintained full strength in all extremities (Tr. 24).  The law judge also mentioned that the plaintiff's reduced range of motion did not preclude his gainful employment in January 2010 (id.).

The record further reflects other normal or non-debilitating clinical findings during the alleged disability period.  Thus, in May 2010, the plaintiff was examined by Dr. Mark Frankle, who observed that the plaintiff's neurological system was normal, and an examination of the plaintiff's cervical spine did not provoke discomfort. With regard to the plaintiff's left shoulder, which is a focus of his disability claim, the plaintiff had full (5/5) strength, a normal pulse, and there was no atrophy or appreciable external rotational weakness (see id.; Tr. 226, 227).

-14-

Additionally, in September 2011, Dr. Daniel Murphy conducted a comprehensive medical examination that did not reveal debilitating limitations (Tr. 25). Thus, the law judge noted that, although the plaintiff showed "some discomfort in the cervical spine and some limitation of range of motion of the shoulder, ... [there was] no tenderness about the left shoulder" or cervical spine, and no objective evidence of injury to the shoulder or cervical spine (id.; see Tr. 336-37, 346-47). Furthermore, Dr. Murphy observed that in the left upper extremity the plaintiff had normal sensation, good gross strength, good reflexes, and good pulses; there was good gross stability about the shoulder, and good grip strength in both upper extremities (Tr. 336-38, 346-47).

Moreover, the law judge pointed out that Dr. Rendell Sehres, the plaintiff's treating primary physician, "did not specify any functional limitations" due to pain (Tr. 24).[3] To the contrary, Dr. Sehres regularly advised the plaintiff to exercise (see Tr. 287, 307, 349). Treatment notes indicate that the plaintiff was generally compliant in that regard (Tr. 286,

---

[3]Dr. Sehres also regularly found that the plaintiff's neurological examinations were normal (see, e.g., Tr. 284-85, 304, 349).

297, 351 (plaintiff walks for exercise); Tr. 286, 348 ("compliant with regular cardio exercise")). In sum, there is more than ample evidence supporting the law judge's decision to give little weight to Dr. Sidhom's opinion of extreme functional limitations.

The plaintiff argues that the law judge's explanation for rejecting Dr. Sidhom's opinion is not supported by substantial evidence (Doc. 14, pp. 11-14). The plaintiff asserts first that the law judge stated incorrectly that Dr. Sidhom opined the plaintiff's limitations commenced in 2002 (id., pp. 11-12). In the Questionnaire Dr. Sidhom was asked, "In your best medical opinion, what is the earliest date that the description of symptoms and limitations in this questionnaire applies?" to which he responded, "Began evaluating patient w[ith] symptoms and limitations since Jan 22, 2002" (Tr. 379). Therefore, the law judge could reasonably conclude that Dr. Sidhom opined the plaintiff's limitations related back to 2002.

The plaintiff, whose counsel obtained this evidence (see Tr. 374), essentially argues that Dr. Sidhom's statement was ambiguous, and that "it cannot be assumed that the doctor meant Plaintiff's conditions had not deteriorated over time as documented by the underlying records" (Doc. 14,

-16-

p. 11).   The plaintiff therefore argues that the law judge should have contacted Dr. Sidhom for clarification (id.). This argument is meritless.

It is the plaintiff who bears the ultimate burden of proving he is disabled and, therefore, he is responsible for producing evidence in support of his claim.  Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). Accordingly, if the plaintiff thought the statement was ambiguous, his counsel, who requested Dr. Sidhom to complete the Questionnaire, should have contacted the physician for clarification.

Regardless, the law judge's interpretation of Dr. Sidhom's response was reasonable.  Thus, Dr. Sidhom certainly indicated that his opinion of the plaintiff's limitations applied back to 2002, as the question clearly requested Dr. Sidhom to identify the earliest date to which the "limitations in this Questionnaire applies" (Tr. 379).  Dr. Sidhom, in response, listed a date of "Jan 22, 2002" (id.).  The law judge could reasonably conclude that, if Dr. Sidhom had in mind a later date, he would have listed it.

The plaintiff speculates that Dr. Sidhom may have meant that the plaintiff's condition had been deteriorating since 2002 because "underlying

records" document that his condition "deteriorated over time" (Doc. 14, p.

11). However, the plaintiff does not identify in his argument any evidence

supporting this contention (see Doc. 13, p. 2) (the Scheduling Order and

Memorandum Requirements state that the plaintiff forfeits any argument

which he does not  properly "support[] by citations to the record of the

pertinent facts and by citations of the governing legal standards").

Regardless, the treatment notes in the record from Dr. Sidhom reflect an

improvement, not a deterioration, of the plaintiff's symptoms and functioning

(see Tr. 360-81).

Consequently, the law judge could reasonably decide to discount

Dr. Sidhom's opinion of disabling limitations because, along with other

reasons, Dr. Sidhom had overstated the length of time the plaintiff had

purportedly suffered from those limitations.

Next, the plaintiff contends that the law judge "created

inconsistencies between Dr. Sidhom's opinions and the record that are not

relevant" (Doc. 14, p. 12). Specifically, the plaintiff disagrees with the law

judge's finding that there was an inconsistency between the plaintiff's

testimony that he could sit continuously for at least an hour at a time, and Dr.

Sidhom's opinion that the plaintiff is limited to sitting a total of one hour in an eight-hour day (id.; Tr. 376). See Forrester v. Commissioner of Social Security, 455 Fed. Appx. 899, 901 (11th Cir. 2012) (a law judge does not need to give a treating physician's opinion considerable weight if the claimant's daily activities contradict the opinion); Wind v. Barnhart, supra, 133 Fed. Appx. at 692 (noting that a treating physician's assessment contradicted by statements to physicians regarding her daily activities). The law judge reasonably concluded that, if the plaintiff can sit for an hour at a time, or longer (see Tr. 50, 181), then the plaintiff is sitting for more than one hour cumulatively in an eight-hour workday.

The plaintiff argues that his testimony is not inconsistent with Dr. Sidhom's opinion because the act of sitting, standing or walking is different "outside of a workplace setting, such as in his home" (Doc. 14, p. 12). However, the plaintiff does not explain the difference between the physical act of sitting at home and sitting in the workplace. This lame assertion underscores the weakness of the plaintiff's challenge to the law judge's assessment of Dr. Sidhom's opinion. Accordingly, the law judge could reasonably conclude that, because Dr. Sidhom's opinion regarding the

plaintiff's ability to sit is more limited than the plaintiff's own testimony, there is a further reason to discount the doctor's opinion. See Forrester v. Commissioner of Social Security, supra; Wind v. Barnhart, supra.

The plaintiff also argues that the plaintiff's activities of watching television, reading, and driving are not inconsistent with Dr. Sidhom's opinion that the plaintiff's symptoms frequently interfere with his attention and concentration because the plaintiff's activities have "little reference to [the plaintiff's] ability to concentrate on work activities over the course of a 40 hour workweek" (Doc. 14, p. 12). However, Dr. Sidhom was not asked to opine on the plaintiff's ability to concentrate on work activities on a sustained basis over the course of a 40-hour workweek (Tr. 378). Rather, Dr. Sidhom was generally asked "[h]ow often is your patient's experience of pain, fatigue or other symptoms severe enough to interfere with attention and concentration," to which Dr. Sidhom responded "frequently" (id.). The law judge could reasonably find that Dr. Sidhom's opinion that the plaintiff experiences pain that causes frequent interference with attention and concentration is inconsistent with the plaintiff's daily activities.

The plaintiff also asserts that the law judge "does not dispute that Dr. Sidhom supported his opinions with appropriate clinical and diagnostic findings" (Doc. 14, p. 12). That contention is inaccurate. Thus, the law judge specified that the "radiographic evidence ... generally shows that the claimant has no objective cervical problems" and that the evidence is consistent with a residual functional capacity to perform a restricted range of light work (Tr. 25). Further, as discussed supra, pp. 14-15, the law judge noted clinical findings that are inconsistent with Dr. Sidhom's opinion of debilitating functional limitations (Tr. 24). Moreover, the law judge added that the plaintiff's residual functional capacity for a range of light work accommodates the plaintiff's pain symptoms and his reduced range of motion in the left shoulder and neck (see Tr. 24, 25). Thus, the law judge indicated that the clinical and diagnostic findings do not support Dr. Sidhom's opinion of debilitating functional limitations.

The plaintiff additionally argues that the law judge "erred by crediting the opinions from a non-examining source over the treating specialist" (Doc. 14, p. 13). In a Physical Residual Functional Capacity Assessment dated February 3, 2011, non-examining reviewing physician Dr.

-21-

Debra Troiano opined that the plaintiff could perform a range of light exertional work with postural limitations, a limitation to frequent use of his left upper extremity, and avoidance of extreme cold (Tr. 232-39).

The law judge gave Dr. Troiano's opinion great weight because he found that "it is consistent with the cumulative evidence and takes all the claimant's severe impairments into consideration" (Tr. 25). See 20 C.F.R. 404.1527(e)(2); SSR 96-5p, 1996 WL 374183 at *6 (S.S.A.) (state agency consultants are experts in Social Security disability evaluation and the adjudicator must consider their opinions). In this connection, the law judge explained (Tr. 25):

> [Dr. Troiano's] residual functional capacity accounts for his left shoulder and neck pain by limiting him to lifting 10 pounds frequently and 20 pounds on occasion. It also limits the claimant's postural and manipulative movements to further account for his shoulder and cervical pain. This assessment is also consistent with the radiographic evidence, detailed above, which generally shows that the claimant has no objective cervical problems.

The plaintiff argues that the law judge erred in giving Dr. Troiano's opinion great weight because the opinion of a non-examining

physician is entitled to little weight when it contradicts the opinion of an examining physician. See Lamb v. Bowen, supra, 847 F.2d at 703. However, it is well-established that the opinion of a reviewing non-examining physician may be accepted over that of a treating doctor when good cause is stated for discounting the treating physician's opinion. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986); Forsyth v. Commissioner of Social Security, 503 Fed. Appx. 892, 893 (11th Cir. 2013); Forrester v. Commissioner of Social Security, supra, 455 Fed. Appx. at 901-02. As discussed supra, pp. 8-15, the law judge stated good cause for discounting the treating physician's opinion. Further, as the Commissioner notes (Doc. 15, p. 7), the law judge did not cite Dr. Troiano's opinion as the basis for diminishing the weight afforded to Dr. Sidhom's opinion.

The plaintiff argues further that Dr. Troiano's opinion should not have been credited because it was given more than one year prior to the law judge's decision and, therefore, before the record was complete (Doc. 14, p. 13). Specifically, the plaintiff argues that Dr. Troiano did not have the opportunity to review Dr. Sidhom's treatment notes and Questionnaire responses (id.).

This argument is unpersuasive because the plaintiff does not identify any new clinical or diagnostic findings in those treatment records that undermine Dr. Troiano's opinion. See Poellnitz v. Astrue, 349 Fed. Appx. 500, 503 (11th Cir. 2009). Thus, the pain management records repeat the plaintiff's subjective complaints of neck and left shoulder pain, and findings of a decreased range of motion, both of which Dr. Troiano accounted for in her opinion of the plaintiff's residual functional capacity (see Tr. 233-34).

Furthermore, treatment records generated after Dr. Troiano's assessment support her opinion. Thus, Dr. Sidhom's treatment notes show the plaintiff's pain decreasing and his functioning increasing (supra, pp. 11-12). Additionally, Dr. Murphy's physical examination of the plaintiff in September 2011 shows that the plaintiff had only some limitation in range of motion, good strength and pulses, a normal gait, and normal neurological and sensory systems (see Tr. 336-37, 346-47).

In sum, the law judge reasonably concluded that the medical evidence was more consistent with Dr. Troiano's opinion than Dr. Sidhom's opinion, which is a well-recognized basis for discounting the opinion of a treating physician and giving great weight to that of a non-examining

physician's opinion. See Jones v. Bowen, supra; Forsyth v. Commissioner of Social Security, supra; see also Forrester v. Commissioner of Social Security, supra, 455 Fed. Appx. at 902 ("The ALJ clearly articulated its reasons for giving significant weight to the ... non-examining physicians' opinions when it stated that their opinions were more consistent with the medical evidence."). Therefore, the plaintiff's contention that the law judge improperly favored the opinion of a non-examining medical source over Dr. Sidhom's opinion is unpersuasive.

Finally, the plaintiff argues that, even if Dr. Sidhom's opinion does not warrant controlling weight, the opinion of a treating physician is entitled to "deference" based on the factors articulated in 20 C.F.R. 404.1527(c) (Doc. 14, p. 14). The law judge's determination clearly shows that he considered Dr. Sidhom's lengthy treatment of the plaintiff, and he specified Dr. Sidhom's success in reducing the plaintiff's pain and increasing his functioning (Tr. 25). Moreover, the law judge gave reasonable and adequate grounds for discounting Dr. Sidhom's opinion.

B. The plaintiff's second argument challenges the law judge's credibility determination (Doc. 14, pp. 16-17). This contention also lacks

merit, as the law judge gave a reasonable explanation, supported by substantial evidence, for finding the plaintiff only partially credible.

The plaintiff testified that he has pain in his left shoulder and left arm (Tr. 49). He said that, as a result, he cannot reach overhead or straight out with the left extremity, and that he could lift only ten pounds (id.). The plaintiff stated further that he could sit for about one hour continuously and walk for 10-20 minutes (Tr. 50-51). He said that his daily activities include watching television, reading, and cooking dinner for himself and his wife (Tr. 48). He also drives several times a week to do errands (Tr. 51-52).

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that, under this test, there is objectively

determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge properly applied the Eleventh Circuit's pain standard. The law judge recognized the need to articulate a credibility determination, and he referred to the pertinent regulation and Social Security rulings (Tr. 22). Moreover, he set forth criteria that reflects the Eleventh Circuit's test (id.). This demonstrates that the law judge employed the proper analysis. See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

Furthermore, the law judge summarized in his decision the plaintiff's testimony, and he made the following finding consistent with the Eleventh Circuit standard (Tr. 23):

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent

-27-

with the above residual functional capacity assessment.

Significantly, the law judge did not wholly discount the claimant's subjective complaints, but rather accepted that he had functional limitations that substantially restricted him to a limited range of light work (see Tr. 22). Thus, the law judge found the plaintiff's chronic neck pain status post cervical disc fusion, status post left shoulder aneurysm repair, and hypertension were severe impairments (Tr. 21). Moreover, the law judge acknowledged that the plaintiff had some limitation in range of motion, and specified that his determination of the plaintiff's residual functional capacity "limits the claimant's postural and manipulative movements to ... account for his shoulder and cervical pain" (Tr. 25; see also Tr. 26). Moreover, the law judge noted that the limitations on sitting, standing and walking continuously in the residual functional capacity are consistent with the plaintiff's testimony of his functional capabilities (Tr. 26).

Furthermore, the law judge explained why he declined to credit fully the claimant's testimony of debilitating symptoms. Thus, the law judge stated (Tr. 23-24):

The claimant's allegations are only partially credible for several reasons. First, the claimant testified at the hearing that he received unemployment benefits from the second quarter of 2010 to the second quarter of 2011. He admitted that he certified that he was willing and able to work in order to get those benefits. He explained that at the time, he thought he was able to work. While receiving these benefits, he applied for electronic jobs, but looking back on it now, he does not think he could have done those jobs if he would have been offered a position. Although accepting unemployment compensation is not automatically disqualifying, it does decrease the claimant's credibility because in order to get unemployment benefits, one must certify that he is able to work if a job opportunity arises. When the claimant applied for disability in December 2010, alleging that he was too disabled to work since March 2010, he was at the same time[] certifying to unemployment that he was willing and able to work. Such contradictions decrease his credibility.

The claimant's allegations have also been inconsistent. For example, in December 2010, the claimant reported in a pain questionnaire that sitting becomes uncomfortable after a few hours, but at the hearing, he testified that he can only sit for one hour at a time. Likewise, the claimant previously reported that standing and walking does not bother him too much unless he moves his torso or head, but at the hearing, he claimed that he can walk for about 15-20 minutes due to pain (4E). Additionally, some of the claimant's allegations are somewhat unreasonable. For example, even

> though the claimant is right handed and his
> limitations are solely in his left arm, he claims he
> can only lift 10 pounds even when using both
> hands. It is common sense that an adult with no
> limitations in a dominant arm[] can lift at least 10
> pounds using only that dominant hand.
>
> As seen in the medical summary below [pages 24
> and 25 of the decision], the claimant's allegations
> are also not supported by the objective medical
> evidence. ...

This explanation is sufficient to discount the plaintiff's subjective complaints.

See Heppell-Libsansky v. Commissioner of Social Security, 170 Fed. Appx.

693, 699 (11th Cir. 2006).

The plaintiff argues that the law judge's credibility determination

is not supported by substantial evidence (Doc. 14, pp. 16-17). In this regard,

the plaintiff contends that the law judge improperly considered the plaintiff's

receipt of unemployment compensation benefits during the alleged disability

period (id.; see Tr. 154-55).

The plaintiff testified that, in order to receive the unemployment

benefits, he certified that he was ready, willing, and able to work (Tr. 47).

See Fla. Stat. 443.091(1)(d). Further, the plaintiff testified at the hearing that,

at that time, he thought that he was able to work and he applied for jobs that

he believed he could perform (Tr. 47).  Nonetheless, on December 8, 2010, while the plaintiff was receiving unemployment benefits, the plaintiff filed this application for disability insurance benefits, asserting that he was "unable to work because of my disabling condition" since March 16, 2010 (Tr. 144). The plaintiff continued receiving unemployment benefits through the first half of 2011 (Tr. 154-55).

Thus, the plaintiff certified that he was able and willing to work at the same time he represented on his application for disability insurance benefits that he was unable to work.  Therefore, the law judge reasonably found that the plaintiff made contradictory representations regarding his ability to work that diminished the plaintiff's credibility.  See Myers v. Barnhart, 57 Fed. Appx. 990, 997 (3rd Cir. 2003) (it is "entirely proper" for the law judge to consider in determining credibility a plaintiff's receipt of unemployment benefits as it was inconsistent with a claim of disability during the same period); Smith v. Colvin, 756 F.3d 621, 625 (8th Cir. 2014) ("Applying for unemployment benefits adversely affects credibility, although it is not conclusive, because an unemployment applicant must hold himself out as available, willing and able to work.").

Significantly, the law judge stated in the decision that the receipt of unemployment benefits did not automatically disqualify the plaintiff from an award of disability benefits, but that it did decrease the plaintiff's credibility in this instance because "[w]hen the claimant applied for disability in December 2010, alleging that he was too disabled to work since March 2010, he was at the same time certifying to unemployment that he was willing and able to work" (Tr. 23). Notably, the plaintiff testified at the hearing that when he stated on his disability application that he was unable to work he in fact thought he was capable of working (see Tr. 47).

The plaintiff argues that unemployment benefits do not affect his credibility because "he had no other source of income" (Doc. 14, p. 16). The plaintiff's assertion is misleading, as the plaintiff testified that his wife has been working during this time, and that they have been able to get by financially on her income with a reduction in their lifestyle (Tr. 53-54). Furthermore, the circumstance that the plaintiff's actions were precipitated by finances does not make the plaintiff's representations about his ability to work any less contradictory.

The plaintiff also argues that the law judge erroneously found that the plaintiff's statements in a Social Security Administration pain questionnaire were inconsistent with his hearing testimony (Doc. 14, p. 17). Thus, the plaintiff stated in the pain questionnaire that he could sit for a few hours, whereas at the hearing the plaintiff testified that he could sit continuously for only about an hour (Tr. 50-51, 181). Additionally, the plaintiff represented in the pain questionnaire that standing and walking does not bother him too much unless he moves his torso or head, but the plaintiff testified at the administrative hearing that he could walk for only 10 to 20 minutes (id.). Thus, the law judge's finding that the plaintiff made inconsistent statements regarding his functional limitations is supported by substantial evidence.

The plaintiff attempts to reconcile this inconsistency by arguing that the hearing was more than one year after completing the pain questionnaire and "his testimony reflected a deterioration of his condition" (Doc. 14, p. 17). However, the plaintiff does not identify in this argument any evidence supporting this contention (see id.). To the contrary, the plaintiff reported when he completed the pain questionnaire that he was in constant

and severe pain and Dr. Sidhom's treatment notes reflect that the plaintiff's condition and functioning subsequently improved (Tr. 180, 381). Therefore, this argument is meritless.

Finally, the plaintiff argues that he was entitled to "substantial credibility" because he has a good work history (Doc. 14, p. 17). Work history is one of many factors for a law judge to consider. <u>See</u> 20 C.F.R. 404.1529(c)(3). As discussed above, the law judge provided ample grounds for finding that the plaintiff's testimony was only partially credible, notwithstanding his prior work history. <u>See</u> <u>Edwards</u> v. <u>Sullivan</u>, 937 F.2d 580, 584 (11th Cir. 1991) (rejecting the contention that the plaintiff's testimony of disabling symptoms should have been found credible because "she had a good work history").

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence and does not contain reversible error. I, therefore, recommend that the decision be affirmed.

Respectfully submitted,

THOMAS G. WILSON

DATED: NOVEMBER 7, 2014   UNITED STATES MAGISTRATE JUDGE

-34-

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. 636(b)(1).